**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES BROWN, JEFFREY BURKS, ANTONIO COLON, JAMES DEMOSS, JAMESON DIXON, CLARK FAULKNER, KENNETH GEORGE, LEONARD GREGORY, MARSHUN HILL, CEDRIC MUSE, LAROY WASHINGTON, DARRELL WILLIAMS, CHARLES WOODS, and MICHAEL WOODS, on behalf of themselves and similarly situated African-American employees, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | No. 08 C 5908 |
| Plaintiffs, | ) ) ) | Judge Joan B. Gottschall Magistrate Judge Nan R. Nolan |
| v. | ) ) | |
| YELLOW TRANSPORTATION, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, current and former employees of Defendant Yellow Transportation, Inc. ("Yellow"), have filed suit on behalf of themselves and similarly situated African-American employees, seeking redress for violations of 42 U.S.C. § 1981. Specifically, Charles Brown, Jeffrey Burks, Antonio Colon, James DeMoss, Jameson Dixon, Clark Faulkner, Kenneth George, Leonard Gregory, Marshun Hill, Cedric Muse, Laroy Washington, Darrell Williams, Charles Woods and Michael Woods allege that they were subjected to an offensive and racially discriminatory work environment, including racial slurs; racial graffiti; co-workers wearing racially derogatory apparel; disparate terms of employment; denial of equal opportunity to promotions; racially biased discipline; and retaliation for complaints of racial bias.

Currently before the court is Plaintiffs' motion to quash subpoenas and for protective order. For the reasons stated below, the motion is granted.

**BACKGROUND**

Plaintiffs filed this lawsuit on October 15, 2008, and the parties promptly commenced discovery relating to the issue of class certification. On March 31, 2009, Yellow moved for leave to amend its answer and add the affirmative defense of judicial estoppel. In that motion, Yellow claims that during the course of discovery, it learned that Plaintiffs Jeffrey Burks, Antonio Colon and Jameson Dixon were parties to personal bankruptcy proceedings, but failed to disclose to the bankruptcy court the existence of their claims against Yellow. For example, Mr. Burks filed a charge against Yellow with the Equal Employment Opportunity Commission ("EEOC") on October 4, 2005; he was discharged from bankruptcy on July 12, 2007; but he never notified the bankruptcy court of his pending EEOC charge. Mr. Colon, similarly, filed an EEOC charge against Yellow on October 14, 2005, the same day he filed a voluntary petition for Chapter 7 bankruptcy; he was discharged from bankruptcy on March 13, 2006; but he never notified the bankruptcy court of his pending EEOC charge. (Motion to Amend, Doc. 40, ¶¶ 6-15.)

Mr. Dixon also filed an EEOC charge against Yellow on October 4, 2005, shortly after petitioning for Chapter 7 bankruptcy on September 9, 2005; he was discharged from bankruptcy on December 27, 2005; but he never notified the bankruptcy court of his pending EEOC charge. On October 6, 2008, Mr. Dixon filed another voluntary petition for bankruptcy, this time under Chapter 13. (*Id.* ¶¶ 16-20.) He did notify the bankruptcy court about the existence of this lawsuit, but only after Yellow raised the matter with Plaintiffs' counsel.

By May 2009, Yellow believed that it had uncovered facts to support a second affirmative defense – after-acquired evidence. Yellow renewed its motion for leave to amend, adding the following information: Mr. Burks and Laroy Washington both stated on their employment applications that they had never been convicted of a crime when, in fact, Mr. Burks pled guilty to the crime of Theft From Person on November 2, 1981, and Mr. Washington pled guilty to the felony crime of Possession of a Controlled Substance With Intent to Deliver on February 25, 1987. Mr.

Burks was sentenced to two years probation and two days jail time, and he had to pay $60 in court costs and fees. Mr. Washington was sentenced to two years probation. (*Id.* ¶¶ 22-26.)

The motion to amend remains pending before the district court, but all other discovery matters have been referred to this court for resolution. This includes Plaintiffs' July 13, 2009 motion to quash subpoenas and for protective order, which relates to the motion for leave to amend. Specifically, in March and June 2009, Yellow served 19 subpoenas on Plaintiffs' former employers, requesting, among other things, personnel files, payroll records, performance reviews, disciplinary records, background and reference checks, and complaints or charges. Yellow claims that in light of its independent discovery that Mr. Burks and Mr. Washington were not truthful on their employment applications, they are entitled to discovery aimed at determining whether there are additional bases for an after-acquired evidence defense with respect to these and the other Plaintiffs. Plaintiffs insist that the requested discovery is improper and lacking in any probative value, prompting the instant motion.

## DISCUSSION

"A party has a general right to subpoena any person to . . . produce documents for inspection and copying." *Davis v. City of Springfield, Illinois*, Nos. 04-3168 and 07-3096, 2009 WL 910204, at *2 (C.D. Ill. Apr. 1, 2009) (citing FED. R. CIV. P. 45). "[T]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Wallace v. Hounshel*, No. 1:06-cv-01560-RLY-TAB, 2008 WL 89933, at *2 (S.D. Ind. Jan. 2, 2008). In other words, "[a] subpoena will survive a motion to quash when it designates topics that are reasonably calculated to lead to admissible evidence." *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 621 (S.D. Ill. 2007).

Yellow argues that the subpoenas seek evidence bearing on Plaintiffs' credibility, which is relevant in determining their adequacy as class representatives. Yellow also claims that the

subpoenas may produce documents relevant to its after-acquired evidence defense. The court considers each theory in turn.

### A. Adequacy of Representation

Yellow first focuses on the fact that Plaintiffs are seeking to represent a class of similarly situated employees. To succeed on a motion for class certification, Plaintiffs must show, among other things, that they "will fairly and adequately protect the interests of the class." *Barragan v. Evanger's Dog and Cat Food Co.*, __ F.R.D. __, 2009 WL 2762403, at *1 (N.D. Ill. 2009) (quoting FED. R. CIV. P. 23(a)). Some courts have found that "[b]ecause the lead plaintiffs will act as fiduciaries for the absent plaintiffs, the court can examine their integrity and credibility in determining whether they are suitable representatives for the class." *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 390 (N.D. Ill. 2006) (citing *Kaplan v. Pomerantz*, 132 F.R.D. 504, 508-10 (N.D. Ill. 1990)). *See also Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225, 229 (S.D. Ind. 2006) ("[P]ersonal characteristics, such as the credibility and integrity of a putative class representative, have a direct bearing on their ability to adequately represent absent members of the class.")

Other courts, however, have found that "credibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative." *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 613 (N.D. Ill. 2009) (quoting *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 301 (N.D. Ill. 2008)). *See also Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007) (same). This court need not resolve the question, which is a matter for the district court in ruling on Plaintiffs' anticipated motion for class certification. This court must determine, however, whether discovery on the issue is warranted here.

Yellow claims that the fact that (1) Mr. Burks and Mr. Washington failed to disclose their criminal convictions on their employment applications; and (2) Mr. Burks, Mr. Colon and Mr. Dixon failed to disclose their discrimination charges to the bankruptcy court, "severely undermines the

credibility" of these Plaintiffs.[1]  (Def. Resp., at 8.)  The subpoenas, Yellow argues, may reveal other lies in the employment applications of these and other Plaintiffs, which may "bolster Yellow's claim that the Plaintiffs are inadequate class representatives."  (*Id.* at 9.)

Assuming that credibility is relevant to a showing of adequate representation, the court has significant doubts that the misrepresentations found in the employment applications of Mr. Burks and Mr. Washington "severely undermine" their ability to represent the class.  Mr. Burks applied to work at Yellow nearly 14 years after pleading guilty to the crime of Theft From Person on November 2, 1981.  Mr. Washington applied to work at Yellow more than nine years after pleading guilty to the crime of felony Possession of a Controlled Substance With Intent to Deliver.  "Where courts have found that credibility issues render the proposed representative inadequate, the representative's credibility has been dubious with respect to substantial issues directly relevant to the claims at issue."  *Roe v. Bridgestone Corp.*, 257 F.R.D. 159, 169 (S.D. Ind. 2009).

Yellow claims the requested documents may show that Plaintiffs "fail[ed] to disclose the existence of prior employers, the true reasons for their past separations from employment, or their prior attendance histories."  (Def. Resp., at 9.)  The court does not see how this information is pertinent to Plaintiffs' ability to represent a class alleging racial harassment and discrimination.  *Compare Brider v. Nationwide Credit, Inc.*, No. 97 C 3830, 1998 WL 729747, at *3-4 (N.D. Ill. Oct. 14, 1998) (plaintiff was not an adequate class representative in fair debt collection case where, among other things, she repeatedly gave false answers at her deposition).  The subpoenas at issue here are unlikely to bolster a claim of inadequacy, and the court declines to find them relevant on this basis.  *See Lau v. Arrow Fin. Servs., LLC*, No. 06 C 3141, 2007 WL 1502118, at *6 (N.D. Ill.

---

[1] Yellow claims that "[i]t also appears that Plaintiff Kenneth George . . . has failed to file a 2008 Federal Income Tax Return."  (Def. Resp., at 5.)  The court does not see how this has any relevance to Mr. George's truthfulness in the employment context.

May 22, 2007) ("[T]he burden of demonstrating that the class representative is adequate is not heavy.")

### B. After-Acquired Evidence

Yellow next argues that the subpoenas may uncover information relevant to its after-acquired evidence defense. Under this defense, an employee's misconduct may limit his recovery of damages. As the Seventh Circuit has explained:

> [a]n employer may be found liable for employment discrimination, but if the employer later – typically in discovery – turns up evidence of employee wrongdoing which would have led to the employee's discharge, then the employee's right to back pay is limited to the period before the discovery of this after-acquired evidence.

*Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047 (7th Cir. 1999) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361 (1995)). Yellow notes that it discovered, through public record searches, that both Mr. Burks and Mr. Washington falsely stated on their employment applications that they had never been convicted of crimes. These misrepresentations, Yellow says, "warranted Mr. Burks' and Mr. Washington's terminations." (Def. Resp., at 10.) Yellow now seeks to determine whether these two Plaintiffs "or any of the remaining Plaintiffs have made additional misrepresentations in their employment applications, thus lending further support to Yellow's after-acquired evidence defense." (*Id.*) (emphasis omitted).

Plaintiffs respond that the after-acquired evidence defense only applies to former employees seeking back pay for wrongful termination. Yellow disagrees, but all of its cited cases involve former employees who allege constructive discharge or wrongful termination. *See Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996) (plaintiff who resigned his employment could not pursue constructive discharge claim, but employer's discovery of after-acquired evidence "may bear upon" the plaintiff's remedy upon a finding of liability); *Martin v. Scott & Stringfellow, Inc.*, No. 3:08-cv-417, 2009 WL 54510, at *1-2 (E.D. Va. Jan. 8, 2009) (where employee resigned due to an allegedly hostile work environment and claimed constructive discharge, court allowed

defendant to amend its answer to assert an after-acquired evidence defense); *Newland v. Stevinson Toyota East, Inc.*, No. 05-cv-01380-EWN-MEH, 2006 U.S. Dist. LEXIS 21172, at *6-7 (D. Colo. Apr. 10, 2006) (allowing defendant to amend its answer to assert an after-acquired evidence defense where the plaintiff cited no authority suggesting that the doctrine "has not been extended to situations of constructive discharge."); *Gutescu v. Carey Int'l, Inc.*, No. 01-4026, 2003 U.S. Dist. LEXIS 27504, at *7 (S.D. Fla. June 23, 2003) (employee alleging discriminatory discharge had to respond to discovery requests relating to an after-acquired evidence defense).

Only one Plaintiff, Kenneth George, has a potential claim for back pay for wrongful termination: Yellow terminated his employment in October 2008, and he claims that it was discriminatory. The remaining Plaintiffs are all current employees. Yellow has not cited, nor has the court found any cases applying the after-acquired evidence doctrine to limit the damages of a current employee. Yellow argues that this is due to the following dilemma: having discovered evidence meriting discharge, an employer would have to choose between firing the employees and risking additional discrimination and/or retaliation charges, or keeping the employees on the payroll and forfeiting an after-acquired evidence defense. Presumably, however, a legitimate termination would accomplish the same goal as the after-acquired evidence doctrine: limitation of back pay. It is thus not clear that employers may seek discovery regarding after-acquired evidence in these circumstances without following through on the termination.

Yellow also stresses that several Plaintiffs are seeking to recover back pay for failure to promote and/or discriminatory layoff. This includes Charles Brown, James DeMoss, Clark Faulkner, Antonio Colon, Jameson Dixon, Laroy Washington, Charles Woods and Darrell Williams. (Cmplt. ¶¶ 49(e), 64(b), 75(c); Def. Resp., at 11 n.12.) Plaintiffs claim this is inaccurate, insisting that the only damages they seek are for "the wrongs caused by the hostile environment." (Pl. Reply, at 9.) All of these arguments are more properly addressed by the district court in ruling on Yellow's motion to amend. Absent the district court's guidance, the court will take a broad approach and assume

that the doctrine may apply to these employees in addition to Mr. George]. *See Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007) ("Courts are to use their discretion under Rule 15(a) to liberally grant permission to amend pleadings."); *Cima v. WellPoint Health Networks, Inc.*, No. 05-cv-4127-JPG, 2008 WL 746916, at *3 (S.D. Ill. Mar. 18, 2008) ("Rule 26 embodies a liberal discovery standard.")

This, however, does not end the court's inquiry. Plaintiffs argue that the subpoenas still should be quashed because defendants cannot seek discovery aimed solely at uncovering evidence to support an after-acquired evidence defense. (Pl. Mot. ¶ 13.) In *Woods v. Fresenius Med. Care Group of N. Amer.*, No. 1:06-cv-1804-RLY-WTL, 2008 WL 151836 (S.D. Ind. Jan. 16, 2008), for example, the court quashed subpoenas issued to the plaintiff's past and current employers where the defendant had no basis for believing that she had been untruthful. *Id.* at *2. The court explained that "an employment discrimination plaintiff does not open her entire work history up for discovery by the defendant as a matter of course; rather, the defendant must demonstrate a specific reason why the information is relevant to the particular claims and defenses in the case at hand." *Id.* at *1. *See also Perry v. Best Lock Corp.*, No. IP 98-C-0936-H/G, 1999 WL 33494858, at *3 (S.D. Ind. Jan. 21, 1999) ("[D]iscovery is not warranted for the *sole* purpose of developing a possible after-acquired evidence defense.") (emphasis in original).

Yellow claims that, unlike the defendants in *Woods* and *Perry*, it has identified specific reasons for issuing subpoenas to Plaintiffs' former employers – the untruthfulness of Mr. Burks, Mr. Washington, Mr. Colon and Mr. Dixon. In Yellow's view, its discovery of "a wide variety of material misrepresentations" prior to even issuing the subpoenas more than justifies the discovery. (Def. Resp., at 13.) The court disagrees. Yellow does not claim that it could fire Mr. Burks, Mr. Colon or Mr. Dixon for failing to make required disclosures to the bankruptcy court. Thus, these misrepresentations are not relevant to an after-acquired evidence defense, and cannot justify Yellow's subpoenas to their past employers. The court also declines to find that the 1980s

8

convictions of Mr. Washington and Mr. Burks support a review of their employment histories, much less those of the other Plaintiffs. Yellow has not offered any basis for imputing dishonesty from one plaintiff to another. The *McKennon* Court recognized that "employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist [discrimination] claims." 513 U.S. at 363. The Court also opined, however, that courts can deter most abuses by invoking "the appropriate provisions of the Federal Rules of Civil Procedure." *Id.*

Plaintiffs' motion to quash the subpoenas is granted. To the extent Yellow has already received responses to any of the subpoenas, it must destroy the records and cannot utilize any information contained in them.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Quash Subpoenas and Motion for Protective Order [45] is granted.

ENTER:

Dated: October 8, 2009

_____
NAN R. NOLAN
United States Magistrate Judge