**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CHARLES BROWN, JEFFREY BURKS,** ) | |
| **ANTONIO COLON, JAMES DEMOSS,** ) | |
| **JAMESON DIXON, CLARK FAULKNER,** ) | |
| **KENNETH GEORGE, LEONARD GREGORY,** ) | |
| **MARSHUN HILL, CEDRIC MUSE, LAROY** ) | |
| **WASHINGTON, DARRELL WILLIAMS,** ) | |
| **CHARLES WOODS, and MICHAEL WOODS,** ) | |
| **on behalf of themselves and similarly** ) | |
| **situated African-American employees,** ) | **No. 08 C 5908** |
| ) | |
| **Plaintiffs,** ) | **Judge Joan B. Gottschall** |
| ) | **Magistrate Judge Nan R. Nolan** |
| **v.** ) | |
| ) | |
| **YELLOW TRANSPORTATION, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, current and former employees of Defendant Yellow Transportation, Inc. ("Yellow"),

have filed suit on behalf of themselves and similarly situated African-American employees, seeking

redress for violations of 42 U.S.C. § 1981. Specifically, Plaintiffs allege that they were subjected

to an offensive and racially discriminatory work environment, including racial slurs; racial graffiti;

co-workers wearing racially derogatory apparel; disparate terms of employment; denial of equal

opportunity to promotions; racially biased discipline; and retaliation for complaints of racial bias.

Currently before the court is Plaintiffs' motion for leave to amend the complaint. For the

reasons stated below, the motion is granted.

**BACKGROUND**

Plaintiffs filed this lawsuit on October 15, 2008, seeking to represent a class of African-

American employees working at Yellow's facility in Chicago Ridge, Illinois from October 15, 2004

to the present. The parties promptly commenced oral and written discovery relating to the issue

of class certification, focusing on Plaintiffs' allegations of wrongdoing at Chicago Ridge. In or about

March 2009, YRC, Inc. ("YRC"), Yellow's parent company, merged Yellow's operations with another YRC company, Roadway Express, Inc. ("Roadway"). In December 2009, the Chicago Ridge facility was closed, and all Plaintiffs and putative class members who were not on lay-off status and who had active work shifts were transferred to a former Roadway facility in Chicago Heights, Illinois.

With two minor exceptions, class discovery closed nearly a year ago on July 31, 2009. On April 12, 2010, Plaintiffs filed an amended complaint adding Mack Leonard as a named Plaintiff; adding YRC as a named Defendant; and redefining the class to include individuals employed at both the Chicago Ridge and Chicago Heights facilities. (Doc. 71.) Defendants objected that the class definition was overly broad, prompting Plaintiffs to seek leave to file a corrected amended complaint with the following new class definition: "all current and former African-American employees employed . . . at [Defendants'] facility [in] Chicago Ridge, Illinois and those Chicago Ridge employees transferred to work at the facility located [in] Chicago Heights, Illinois."

Plaintiffs' motion for class certification is due on July 31, 2010, but the parties cannot agree on the proper scope of the amended complaint. Yellow does not object to adding Mr. Leonard as a Plaintiff, or to adding YRC as a Defendant. Both of those changes are granted. Yellow does, however, object to expanding the putative class to include claims arising after Chicago Ridge employees transferred to Chicago Heights.

## DISCUSSION

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires," so long as there is no harm to the other party. FED. R. CIV. P. 15(a)(2); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *6 (N.D. Ill. Jan. 24, 2000). "Reasons for finding that leave should not be granted include 'undue delay [and] undue prejudice to the opposing party by virtue of allowance of the amendment.'" *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (quoting

*Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Yellow argues that it will suffer undue prejudice and delay if the court accepts Plaintiffs' new class definition.  The company also objects that allegations relating to the Chicago Heights facility are the subject of another lawsuit pending in this district, and should not be duplicated here.  *See E.E.O.C. v. Roadway Express, Inc. and YRC, Inc.*, Nos. 06 C 4805, 08 C 5555 (N.D. Ill.) (Judge Cox) (the "Roadway Litigation").  Plaintiffs argue that the transferred individuals continue to experience race discrimination and harassment at Chicago Heights, and that they should be allowed to obtain injunctive relief and recover damages for this ongoing mistreatment.

### A.     Undue Prejudice and Delay

Yellow sees Plaintiffs' new class definition as an improper attempt to add new claims arising out of an entirely separate facility.  Yellow stresses that class discovery is closed, and that it has not been able to conduct any discovery to identify:

> (1) what the Chicago Heights claims may be, (2) who, if anyone, may have been the alleged bad actors, (3) who among the Chicago Heights' supervisors and which of Chicago Heights' policies and procedures might be relevant to the alleged new claims, and (4) what, if any, similarity exists between the Chicago Heights claims and the Chicago Ridge claims.

(Doc. 83, at 7.)  Plaintiffs respond that they are merely "adapt[ing] their Complaint to the changed circumstances that Defendant has occasioned by its transfer of Plaintiffs to the Chicago Heights facility and its ongoing racial harassment of Plaintiffs at that facility." (Doc. 84, at 4.)  Plaintiffs note that the original complaint always sought to recover for race discrimination and harassment occurring from October 15, 2004 to the present, and emphasize that Yellow (or YRC) itself is responsible for the mid-litigation transfer of employees to a new facility.  (*Id*. at 5.)

In the court's view, Yellow has not met its burden of establishing that it will suffer undue prejudice by virtue of the amended class definition.  The definition arguably contemplates new incidents of race discrimination and harassment occurring at a separate Chicago Heights facility,

which may involve different conduct, actors and procedures. Nevertheless, the parties have not yet taken any merits discovery in this case, no trial date has been set, and Plaintiffs promptly sought leave to amend within four months of learning of the employee transfers. In addition, Plaintiffs' amendment stems from Yellow's (or YRC's) own actions in transferring employees to a new facility, which Plaintiffs could not have anticipated at the time they filed their initial lawsuit.

Yellow's cited cases are easily distinguishable. In *Sides v. City of Champaign*, 496 F.3d 820, 825-26 (7th Cir. 2007), for example, the district court denied the plaintiff's request for leave to amend his complaint to add a new defendant. *Id*. at 825. In affirming this decision, the Seventh Circuit noted that the plaintiff "was on notice of his possible claim" against the new defendant, but "for no reason other than a failure to investigate the possible legal basis of his claim delayed any attempt to bring that claim for seven months." *Id*. By then, discovery was set to close in only 20 days. *Id*. *See also Ferguson v. Roberts*, 11 F.3d 696, 706-07 (7th Cir. 1993) (in securities fraud case, court properly denied plaintiffs' request to file third amended complaint where plaintiffs were aware of the new allegations but failed to mention them until one month before discovery closed, raising concerns that it was a delay tactic to postpone an impending trial date); *Conner v. Illinois Dep't of Natural Resources*, 413 F.3d 675, 679-80 (7th Cir. 2005) (district court did not abuse its discretion in denying plaintiff's request to amend where she was aware of the new claim prior to filing the lawsuit but first raised it in a response brief in opposition to summary judgment).

Yellow concedes that the amended class definition "does not necessarily increase the size of the potential class." (Doc. 83, at 4.) Yet the company objects that "there will be . . ., potentially, multiple new plaintiffs with varying factual and legal claims." (*Id*. at 8.) Yellow directs the court to *Davis v. United States*, 961 F.2d 53 (5th Cir. 1991), in which the plaintiff executed a promissory note with PetroBank National Association ("PetroBank"), secured by a one-half interest in a parcel of land. *Id*. at 55. A few years later, the Office of the Comptroller of the Currency declared PetroBank insolvent and appointed the Federal Deposit Insurance Corporation as receiver. *Id*.

The plaintiff subsequently defaulted on the promissory note, and a successor trustee conducted a nonjudicial foreclosure on the plaintiff's one-half interest in the parcel of land. *Id*.

The plaintiff filed suit against the United States, claiming that his interest in the land was sold for some $6 million less than the actual value. He initially alleged violation of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and asserted claims for conversion, breach of fiduciary obligation and misrepresentation. The plaintiff later sought leave to amend the complaint to allege constitutional violations and a claim under the Quiet Title Act, 28 U.S.C. § 2409a. *Id*. The Fifth Circuit agreed that such an amendment was improper, in part because "the Quiet Title claim involved the rights of other parties who held interests in the property in question." *Id*. at 57. As a result, the claim "would apparently have required the joinder of additional parties," and "[t]his joinder would have complicated the district court proceedings, as well as the Government's ability to prepare a case which initially involved fewer parties." *Id*.

Unlike in *Davis*, there are already some 15 named Plaintiffs in this case, and they seek to represent a class of similarly situated individuals, all with similar grievances. Contrary to Yellow's suggestion, the mere possibility of adding new plaintiffs under such circumstances is not sufficient to demonstrate undue prejudice. Nor has Yellow adequately explained its conclusory assertion that new claims arising out of the Chicago Heights facility "will unduly prejudice Yellow and its impending opposition to class certification." (Doc. 83, at 7.) To certify a class, the court must find that "each requirement of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) is satisfied as well as one subsection of Rule 23(b)." *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). Yellow asserts that it needs discovery as to the alleged bad actors, supervisors, relevant policies and procedures, and "what, if any, similarity exists between the Chicago Heights claims and the Chicago Ridge claims." (Doc. 83, at 7.) Yellow has not articulated, however, how this additional information is necessary to respond to a motion for class certification. *See Judge v. Quinn*, __ F.3d __, 2010 WL 2652204, at *18 (7th Cir. 2010) ("It

5

is not the obligation of this court to research and construct legal arguments open to parties . . . and perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotations omitted).

Yellow objects that it is improper to inject entirely new and separate claims into pending litigation. In support of this position, Yellow cites *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420 (7th Cir. 1993), in which the plaintiffs sought to recover for damages to their land caused by petroleum contamination. *Id*. at 1423. They initially argued that the contamination was due to a spill of unleaded gasoline that occurred in 1944, presumably to take advantage of more lax clean-up standards than for lead contamination. Two years into the litigation, however, the plaintiffs sought to "reverse course and recover their clean-up costs by persuading a court that what was really cleaned up was a much later diesel-fuel spill." *Id*. at 1427. The Seventh Circuit agreed with the district court that the suit should not be expanded to include a claim of diesel-fuel contamination. The court reasoned that "the plaintiffs were seeking to make a fundamental change in the theory of their case after two years of litigation, including extensive pretrial discovery." *Id*. at 1428.

In this case, Plaintiffs are not seeking to inject an entirely new theory of recovery. They continue to allege ongoing race discrimination and harassment, including racial slurs; racially hostile statements, symbols and language; and racially discriminatory promotion and disciplinary practices. (Corrected Amended Cmplt., Doc. 79-1, ¶ 154.) The only difference is that the period "October 15, 2004 to the present" now includes behavior occurring when Yellow's African-American employees were transferred to the Chicago Heights facility in or about December 2009. As noted, Yellow and/or YRC is responsible for that changed circumstance. On these facts, Yellow has not demonstrated undue prejudice sufficient to preclude the amended class definition. As for Yellow's claim of undue delay, "delay by itself is normally an insufficient reason to deny a motion for leave to amend. . . . Delay must be coupled with some other reason," typically prejudice to the non-

moving party. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). Yellow's undue prejudice and delay objections are both overruled.

### B.    Duplication

Yellow argues that the amended class definition is nonetheless improper given that there is another pending lawsuit that seeks to recover for allegedly discriminatory acts occurring at the Chicago Heights facility – *i.e.*, the Roadway Litigation. Yellow objects that Plaintiffs "should not be permitted to heap their duplicative claims onto this separate action pending before this Court." (Doc. 83, at 9.) *See Alchemist Jet Air, LLC v. Century Jets Aviation, LLC*, No. 08 C 5386, 2009 WL 1657570, at *2 (N.D. Ill. June 12, 2009) (quoting *Asset Allocation and Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1990)) (courts "should not 'countenance the simultaneous litigation of identical claims in two federal courts.'")

The Roadway Litigation began in September 2006 when the Equal Employment Opportunity Commission ("EEOC") filed suit against Roadway seeking to correct race discrimination suffered by Kenneth Comer and a class of African-American employees working at the Roadway facility in Chicago Heights since at least 2000 (Case No. 06 C 4805). Two years later in September 2008, the EEOC filed a second lawsuit on behalf of Clarence Stokes and a class of African-American employees working at a Roadway facility in Elk Grove Village, Illinois, charging Roadway with race discrimination and harassment since at least 2005 (Case No. 08 C 5555). At the time Plaintiffs filed their separate lawsuit in October 2008, there was no overlap whatsoever between the allegations set forth against Yellow and those at issue in the Roadway Litigation. As Plaintiffs note, Yellow and Roadway employees worked for different companies at different facilities.

The EEOC filed amended complaints in Case Nos. 06 C 4805 and 08 C 5555 on September 29 and December 15, 2009, respectively, alleging that Roadway and Yellow merged into YRC, and that YRC succeeded Roadway in operating the Chicago Heights facility. The EEOC added YRC

as a defendant and affirmatively seeks to redress, among other things, discriminatory acts occurring against African-American employees at the Chicago Heights facility from at least March 13, 2009 to the present.

Plaintiffs concede that there is a potential overlap between these claims and those they seek to add through the amended class definition, acknowledging that "there may be some situations that have occurred since December 2009 that affect both [Yellow and Roadway] employees, and are thus shared between this litigation and the Roadway litigation." (Doc. 84, at 10, 11.) Plaintiffs argue, however, that "[t]his potential for overlap . . . certainly does not translate into any certainty that Plaintiffs here will be able to recover in the Roadway actions." Plaintiffs stress that they "were simply not contemplated" when the Roadway actions were filed, and note that no Roadway employees are included in the class definition proposed here. (*Id*. at 10.) Plaintiffs also represent that they will not seek any duplicative relief. (*Id*. at 11.)

The court disagrees with Yellow's contention that Plaintiffs are attempting to engage in forum shopping. This case is easily distinguishable from *Pieleanu v. Mortgage Electronic Registration Sys., Inc.*, No. 08 C 7404, 2010 WL 1251445 (N.D. Ill. Mar. 24, 2010), which involved plaintiffs who filed counterclaims in state court, and then filed a federal lawsuit alleging the same claims against defendants who could have been joined in the state case. None of the Plaintiffs in this case have themselves filed multiple, identical claims, in multiple fora. In addition, at the time Plaintiffs filed their lawsuit, they had no hope of recovering anything in the Roadway Litigation. Nor does Yellow suggest that this case involves a compulsory counterclaim under Rule 13. *Cf. Alchemist Jet Air*, 2009 WL 1657570, at *2-4.

To be sure, the court should enjoin a proceeding "if it will conserve judicial resources, avoid conflicting rulings, and facilitate the economical management of complex litigation." *Id*. at *2. At this stage of the proceedings, however, it is not clear that both Yellow and Roadway employees are complaining of the same events from December 2009 forward, or that former Yellow employees

8

will recover in the Roadway Litigation for those events. Moreover, Plaintiffs affirmatively disclaim any intent to seek double recovery. As noted, leave to amend a complaint "shall be freely given," and Yellow has not demonstrated adequately that Plaintiffs' allegations are improperly duplicative.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion Pursuant to 15(a) for Leave to Withdraw Amended Complaint and for Leave to File Corrected Amended Complaint *Instanter* [79] is granted.

ENTER:

Dated: July 26, 2010

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge