UNITED STATES DISTRICT COURT
NORTHERN DISTRICST OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES BROWN, JEFFREY BURKS, ANTONIO COLON, JAMES DEMOSS, JAMESON DIXON, CLARK FAULKNER, KENNETH GEORGE, LEONARD GREGORY, MARSHUN HILL, CEDRIC MUSE, LAROY WASHINGTON, DARRELL WILLIAMS, CHARLES WOODS, MICHAEL WOODS, and MACK LEONARD, on behalf of themselves and similarly situated African-American employees, <br><br> Plaintiffs, <br><br> v. <br><br> YELLOW TRANSPORTATION, INC., and YRC, INC., <br><br> Defendants. | Case No. 08 C 5908 <br><br> Judge Joan B. Gottschall |

## **MEMORANDUM OPINION & ORDER**

The named Plaintiffs ("Plaintiffs") have filed a complaint on behalf of themselves and other similarly situated African-American employees (the "putative class") against defendant freight transportation companies Yellow Transportation, Inc. ("Yellow") and YRC, Inc. ("YRC"). The Plaintiffs allege that both defendants violated the Civil Rights Act of 1866, 42 U.S.C. § 1981, by creating a racially hostile work environment for African-American employees, subjecting those employees to disparate treatment, and retaliating against the employees when they complained about the discriminatory conduct. Presently at issue is the Plaintiffs' motion for an order certifying this case as a class action. For the reasons set forth below, the court grants the Plaintiffs' motion.

# I. BACKGROUND

Since October 15, 2004, the Plaintiffs claim that they have suffered racial discrimination at the hands of Yellow and, later, YRC. All of the Plaintiffs and putative class members initially worked for Yellow or YRC at a distribution facility in Chicago Ridge, Illinois; when this facility closed in 2009, some—but not all—of the class members were transferred to the YRC facility located in Chicago Heights, Illinois.[1]

The Plaintiffs allege that Yellow and YRC failed to address recurring complaints regarding other employees' racially hostile behavior, including turning a blind eye to (1) nooses repeatedly being displayed at the Chicago Ridge facility, (2) racially hostile graffiti placed in the bathrooms, and (3) other employees' practices of using of racial slurs, wearing racially hostile clothing, and exposing racially hostile tattoos. In addition, the Plaintiffs allege that Yellow and YRC subjected them to disparate treatment on account of their race by, *inter alia*, disciplining African-Americans more stringently than similarly situated Caucasian employees, and by promoting less senior Caucasians instead of (or prior to) promoting African-Americans. Finally, the Plaintiffs allege that Yellow and YRC retaliated against them and other members of the putative class for complaining about the hostile work environment and racially disparate treatment. As a result, the Plaintiffs seek to certify a class consisting of the following individuals:

---

[1] Yellow, together with another freight company named Roadway Express, Inc. ("Roadway"), began operating as YRC in about October 2008. Thus, Yellow operated the Chicago Ridge location from about October 2004 until October 2008; YRC operated the facility from that point until the facility closed in December of 2009. The Chicago Heights location was initially operated by Roadway, but by the time the Chicago Ridge employees were transferred to Chicago Heights, the Chicago Heights location was run by YRC.

> All current and former African-American employees employed between October 15, 2004, and the present by YRC, Inc. and Yellow Transportation, Inc. at their facility located at 10301 S. Harlem Ave., Chicago Ridge, Illinois ("Chicago Ridge") and those Chicago Ridge employees transferred in 2009 to work at the facility located at 2000 Lincoln Highway, Chicago Heights, Illinois ("Chicago Heights").

According to the Plaintiffs, this class would encompass approximately 354 people. The court now turns to whether this putative class is appropriate for certification under Federal Rule of Civil Procedure 23.

## II. LEGAL STANDARD

Pursuant to Rule 23, the Plaintiffs bear the burden of proving that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 162-63 (1974).

In addition, the putative class must also satisfy the prerequisites set forth in Rule 23(b). *Eisen*, 417 U.S. at 163. To satisfy Rule 23(b)(2), the Plaintiffs must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Under Rule 23(b)(3), the Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." But although the burden rests with the Plaintiffs, the court is reminded that Rule

23 ought to be liberally construed so as to favor the maintenance of class actions where appropriate. *In re Evanston Nw. Healthcare Corp. Antitrust Litig.*, 268 F.R.D. 56, 60 (N.D. Ill. 2010); *see King v. Kansas City Southern Indus.*, 519 F.2d 20, 26 (7th Cir. 1975). Here, the Plaintiffs argue that the class is appropriate for certification under 23(b)(2); failing that, they argue that the class could be certified under a hybrid approach, so that the class would receive equitable relief under Rule 23(b)(2) and damages under Rule 23(b)(3). Finally, the Plaintiffs claim that the class could be certified under Rule 23(b)(3) alone.

## II. DISCUSSION

### 1. Standing

As a preliminary matter, Yellow and YRC state that what they call "the Chicago Heights subclass members" do not have standing to pursue any claim. This argument is predicated in part upon the Defendants' argument that the Plaintiffs actually seek to certify two subclasses: (1) those current and former African-American employees employed from October 15, 2004 to the present by YRC and Yellow at the Chicago Ridge location, and (2) *all* of the Chicago Ridge employees who were transferred to the Chicago Heights location in 2009. In other words, the Defendants would define their "Chicago Heights subclass" to include employees of any race.

As it turns out, starting in 2006 the Equal Employment Opportunity Commission and others filed three lawsuits against YRC and another of its predecessor companies, Roadway, alleging racial discrimination at the Chicago Heights location. The cases were recently resolved by a consent decree, which provides both monetary and equitable relief to certain employees. *See EEOC v. Roadway Express, Inc.*, Nos. 06 C 4805, 08 C 5555; *Bandy v. Roadway Express, Inc.*, No. 10 C 5304 (N.D. Ill. Jan. 12, 2011) ("Consent Decree"). As a result, the Defendants

claim that members of the "Chicago Heights subclass" no longer have standing to maintain this action.

Because standing is an antecedent legal issue, the court must address this question before proceeding to the Rule 23 analysis. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008); *see Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 506-07 (7th Cir. 2010). The court first notes that it is unpersuaded by Yellow and YRC's definition of the "Chicago Heights subclass." The Plaintiffs have made it unequivocally clear that the class they seek to certify consists solely of those African-American employees who initially worked at the Chicago Ridge location *and certain of those same employees* who were later transferred to Chicago Heights.[2]

Moreover, "standing and entitlement to relief are not the same thing. Standing is a prerequisite to *filing suit*, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is *entitled to relief*." *Arreola*, 546 F.3d at 795. In this case, the redress sought by the Plaintiffs encompasses a number of alleged discriminatory practices dating back to Yellow's 2004 operation of the Chicago Ridge location. These practices are not—indeed, they could not be—addressed in a consent decree covering Roadway and YRC's operation of the Chicago Heights facility. In addition, the putative class is not identical to the class of persons covered by the consent decree. For instance, the settlement classes described in the consent decree are limited to particular African-American employees: those holding the position of dockworker, switcher, or janitor positions including seniority list, percenter, and casual positions. *See* Consent Decree at 4-5, ECF No. 118-5. And while some of

---

[2] *See, e.g.*, Pls.' Mem. In Supp. of Mot. for Class Certification at 2 ("The named Plaintiffs and the class they seek to represent are current and former African-American employees who worked at Defendants' Chicago Ridge location at some point between October 15, 2004, and the present.").

the equitable relief described in the consent decree applies to all African-American employees, *see id.* at 7, this is not universally true. For instance, the consent decree requires that a monitor be appointed "to oversee the implementation by YRC of the terms of [the] Decree," *id.* at 22, but this monitor's scope of duties "pertains only to dockworkers, switchers, and janitors at YRC's [Chicago Heights] location," *id.* at 23. Here, by contrast, the putative class would encompass "[a]ll current and former African-American employees" who were employed at Chicago Ridge since October 15, 2004.

To have standing, a plaintiff need only allege that he "has suffered an injury in fact which is fairly traceable to the challenged action of the defendant and likely . . . to be redressed by a favorable decision." *Arreola*, 546 F.3d at 795. There is no question that the putative class satisfies this standard. And even if a plaintiff "may no longer be entitled to all types of relief that he requested, the law does not preclude a plaintiff from filing suit simply because some forms of relief may be unavailable, or indeed because in the end he cannot prove that he is entitled to any relief." *Id.* Thus, the court declines to carve out those portions of the Plaintiffs' claims that may not ultimately entitle them to relief. *See id.* ("When deciding questions of standing, courts must look at the case as a whole, rather than picking apart its various components to separate the claims for which the plaintiff will be entitled to relief from those for which he will not."). The putative class has standing to maintain a class action if certification is otherwise appropriate under Rule 23, which is all that should be decided at this point in time.

2. Rule 23(a)

    a) Numerosity

To obtain class certification, the Plaintiffs must show numerosity, commonality, typicality, and adequacy of representation. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). In this case, the Plaintiffs made use of the Defendants' own employee information system to winnow down the list of putative class members and have arrived at the reasonable estimate of about 354 individuals. While Yellow and YRC argue that their "Chicago Heights subclass" does not satisfy the numerosity requirement, as detailed above, the court rejects this attempt to redefine the class, and Yellow and YRC appear to agree that the class as presently defined is sufficiently numerous. Thus, the Plaintiffs' good-faith estimate suffices. *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (plaintiffs need not specify the exact number of people in the class, but may not rely on conclusory allegations or speculation as to class size); *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 431 (N.D. Ill. 2003) (while an exact number is not required, a plaintiff is "required to provide a good faith estimate of the size of the class"). The court finds that the numerosity requirement is satisfied because it would be impracticable to join more than 350 individuals or to relitigate the § 1981 claims hundreds of times. *See Radmanovich*, 216 F.R.D. at 431.

    b) The Effect of Supervisors in the Class

The court next must determine whether there are common questions of law or fact amongst the putative class, whether the claims and defenses of the Plaintiffs are typical of those in the class, and whether the Plaintiffs' counsel and the named Plaintiffs themselves will adequately protect the interests of the class. These inquiries are often interrelated, *see, e.g.*,

*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), but here in particular there is one issue that stands out: whether a class defined to include "all African-American employees"—i.e., both supervisors and non-supervisors—is appropriate for certification given that the complained-about conduct was undertaken by supervisors and non-supervisors alike. Making matters somewhat more complicated, one of the named Plaintiffs, Mr. Gregory, held a supervisory role, raising the question as to whether his claims are typical and whether his role creates a conflict of interest so as to render him an inadequate representative under Rule 23(a)(4).

In some cases, the inclusion of supervisors as part of the class when they are also part of the problem renders class certification inappropriate. This is because in many discrimination class action suits, the plaintiffs' allegations focus solely upon decisions relating to individual class members: hiring, promotion, discipline, or the like. In those cases, a supervisor may have an actual conflict of interest with the rest of the class. *See, e.g.*, *Randall v. Rolls Royce Corp.*, --- F.3d ---, 2011 WL 1163882 (7th Cir. 2011). For instance, in *Randall*, the Seventh Circuit found that the named plaintiffs—both supervisors—could not adequately represent the interests of the class, because the plaintiffs sought recovery under Title VII and the Equal Pay Act. The court noted that these plaintiffs had an untenable conflict of interest, because as supervisors, they had authority over compensation and could manufacture evidence of discrimination. *See id.* at *5.

However, there is no *per se* rule; instead, "[t]he question whether employees at different levels of the internal hierarchy have potentially conflicting interests is context-specific and depends upon the particular claims alleged in a case." *Staton v. Boeing Co.*, 327 F.3d 938, 958-59 (9th Cir. 2003). Here, the nature of the conduct alleged largely alleviates any concern. Although the Plaintiffs have detailed instances of disparate treatment, they have also made it

8

clear that those incidents are recounted only to support their hostile work environment claims—claims that are further supported by allegations of public, frequent,[3] conduct, including a number of noose hangings "in highly visible places"; an incident involving hanging stuffed monkeys from a ceiling; racially hostile graffiti placed in the bathrooms, workrooms, and on the outside of trailers; the open display of racially hostile tattoos, clothing, and symbols; and the broadcasting of racially disparaging terms over the company radio. Given the particulars of the conduct alleged, the inclusion of both supervisor and non-supervisor employees in the class does not destroy commonality, typicality, or adequacy. *See Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 661 (N.D. Ill. 2006) ("Here the strength of the common injury and interest shared by the named plaintiffs and class members—the harm caused by an allegedly hostile work environment and the interest in eliminating that environment—plainly overrides any potential conflicts."); *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 434 (N.D. Ill. 2003) (noting that "courts have certified classes that included both supervisory and nonsupervisory personnel where all employees share the same interests and suffered the same injuries" and going on to find that the plaintiff adequately represented the interests of the class); *Jefferson v. Windy City Maintenance, Inc.*, No. 96 C 7686, 1998 WL 474115, at *8-9 (N.D. Ill. Aug. 4, 1998) (recognizing that there may be a "general tension between a supervisor who initiates and may implement discipline and those who may be the objects of the discipline," but finding that "any such tension is overcome by the supervisor's personal interest in eliminating the alleged discrimination as to herself"); *see also Palmer v. Combined Ins. Co. of Am.*, No. 02 C 1764, 2003 WL 466065, *2-3 (N.D. Ill. Feb. 24, 2003). The court also notes that if an actual conflict of

---

[3] *See* Pls.' Mem. In Support of Mot. for Class Certification at 9 (citing multiple plaintiffs' deposition testimony that racially charged graffiti occurred at least once per week).

interest appears down the road, the court may at that time certify subclasses with separate representation.[4] *See Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009) ("To deny class certification now, because of a potential conflict of interest that may not become actual, would be premature.") (citations omitted).

### c) Commonality

Turning now to the question of commonality, "some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017-18. To satisfy the commonality requirement, the Plaintiffs need only establish a single common nucleus of operative law or fact. *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2006 WL 794734, at *3 (N.D. Ill. Mar 22, 2006) (citing *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 399 (N.D. Ill. 1987)). Where a defendant engages in "standardized conduct" toward members of the proposed class, the commonality requirement is often satisfied. *Nike Retail Servs.*, 234 F.R.D. at 659.

The Plaintiffs argue that YRC and Yellow's local management willfully ignored or promoted the hostile work environment, and that corporate management failed to exercise oversight to ensure that its non-discrimination policies were enforced. In return, the Defendants argue that the Plaintiffs focus solely upon individual complaints and fail to "bridge the gap" between those complaints and the injuries suffered by the class. Yellow and YRC also argue that

---

[4] For instance, the court notes that an employer has an affirmative defense if it can establish: "(a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *see also Cerros v. Steel Techs., Inc.*, 398 F.3d 944 (7th Cir. 2005). If the conduct of supervisors becomes a disputed factual issue, the court may revisit its decision to certify the class as presently defined.

their decentralization in decisionmaking allowed supervisors to rely on both objective and subjective factors, which "eviscerate[s] any claim of standardized behavior." Defs.' Resp. at 21.

When employers use subjective criteria in employment decisions, would-be class action plaintiffs often have a tougher row to hoe. *See McReynolds v. Lynch*, No. 05 C 6583, 2010 WL 3184179, at *5 (N.D. Ill. Aug. 9, 2010). However, some subjectivity in decisionmaking does not preclude a finding of commonality. For instance, even company-wide classes may be appropriate for certification if statistical evidence supports a pattern of discriminatory outcomes based on subjective decisionmaking. *See Adams v. R.R. Donnelley & Sons*, --- F. Supp. 2d ---, 2001 WL 336830, at *3-4, *11 (N.D. Ill. 2001). Yellow and YRC rightly note that the Plaintiffs' claims implicate a number of supervisors, employees holding different positions, and time periods. Where this type of diversity creates the need for a multitude of individual inquiries, commonality is destroyed. *See Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 460-61 (N.D. Ill. 2009) (collecting cases). But here, the Plaintiffs allege that various racially hostile incidents were witnessed first-hand by multiple people, and discussed and shared with many others. For this reason, the commonality requirement is satisfied. *See Adams*, 2001 WL 336830, at *13 ("The issues of what occurred at a particular venue, whether it rose (or fell) to the level necessary to be actionable under the law, and whether the company should be held liable because of the action or inaction of management provide a common nucleus of operative fact and law sufficient to satisfy Rule 23(a)(2)'s commonality requirement.").

d) <u>Typicality</u>

The Plaintiffs must also show that their claims are typical of the class. This inquiry is closely related to commonality, *see Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998), and

11

focuses upon Yellow's and YRC's actions, not any particular defenses they may have against the named Plaintiffs. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). In other words, "[a] claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the plaintiffs'] claims are based on the same legal theory. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). The Plaintiffs describe a number of events that are common to, and shared across, members of the putative class, including the named Plaintiffs. Moreover, the Plaintiffs assert one overarching hostile work environment claim. While the Plaintiffs also describe certain individualized adverse decisions and disparate treatment, and while Yellow and YRC may establish that their decisions were not made on the basis of race, those are the very types of particularized defenses that are irrelevant to the typicality analysis. *See Wagner*, 95 F.3d at 534. Here, the Plaintiffs' claims "have the same essential characteristics as the claims of the class at large," *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009), and they have established that their claims are typical.

    e) <u>Adequacy</u>

Under Rule 23(a)(4), the Plaintiffs must also establish adequacy of representation. This analysis is composed of two separate inquiries: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc) (quotation marks omitted)).

Yellow and YRC do not contest the adequacy of the Plaintiff's counsel, and the court finds that counsel possess the necessary qualifications to protect the interests of all class

members. Each of the named counsel have significant experience in both employment discrimination litigation and in class action litigation, and the history of this litigation thus far indicates that counsel have devoted significant time and resources to the case.

As to the adequacy of the named Plaintiffs, the crux of Yellow and YRC's complaint is that the inclusion of supervisors in the class (and of Mr. Gregory as a named Plaintiff in particular) renders the class representatives inadequate. Because the court has already explained why the nature of the Plaintiffs' hostile work environment claim largely eliminates the risk of conflict, the court finds the named Plaintiffs to be adequate representatives for the class.

3. Rule 23(b)

The Plaintiffs seek certification under Rule 23(b)(2), but go on to argue that if this is inappropriate, a hybrid certification or a certification under Rule 23(b)(3) will suffice. Finally, they argue that if neither of these two approaches works, the class should be certified entirely under Rule 23(b)(3).

The court agrees with Yellow and YRC that certification under Rule 23(b)(2) is inappropriate. The Seventh Circuit has made it clear that Rule 23(b)(2) is an option "only when monetary relief is incidental to the equitable remedy" sought by the Plaintiffs. *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). As the Defendants point out, however, the Chicago Ridge facility—which is where the vast majority of the alleged incidents took place—has been closed since December of 2009. In addition, many of the putative class members are no longer employed with YRC and it is not clear when, or whether, they will ever be rehired. Finally, the type of injunctive relief available at Chicago Heights is debatable in light

of the relief already afforded by the consent decree.  Any injunctive relief obtained by the Plaintiffs may be limited in scope.  Although the Yellow and YRC may have "acted or refused to act on grounds generally applicable to the class," the court cannot say that "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" is appropriate.  *See* Fed. R. Civ. P. 23(b)(2).

Nor is the monetary relief that the Plaintiffs seek incidental to their damages claims.  To be "incidental," the computation of damages must be mechanical; that is, there must be no need for individual evaluations.  *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005); *see Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581 (7th Cir. 2000).  But the Plaintiffs seek lost wages, "including back pay for failure to promote, and any lost benefits that would otherwise have been available" absent the discrimination, as well as compensatory and punitive damages.  These claims will require an individualized analysis of each class member's circumstances, rendering certification under Rule 23(b)(2) inappropriate.  While the Plaintiffs are correct that the court may consider a divided certification, "[w]hen substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out."  *Jefferson*, 195 F.3d at 898; *see Randall*, 2011 WL 1163882, at *7 ("It is only when the primary relief sought is injunctive, with monetary relief if sought at all mechanically computable, that elaborate notice is not required and so Rule 23(b)(2) is applicable because the claims of the class members are uniform . . . .").

As Rule 23(b)(2) is inappropriate, the question remains whether the Plaintiffs satisfy the requirements of Rule 23(b)(3), *i.e.*, whether "questions of law or fact common to class members

predominate over any questions affecting only individual members," and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The court has already explained why common questions of law and fact predominate over the questions that affect only individual class members. The overarching hostile work environment claim depends in large part upon experiences shared by a significant percentage of the putative class. While individual damages determinations may be necessary, "the need for individual damages determinations does not, in and of itself, require denial of [a] motion for certification." *Arreola*, 546, F.3d at 801.

As to whether a class action is a superior method of adjudication, the court should consider the class members' interests in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already begun by class members, the desirability of concentrating the litigation of the claims in the particular forum, and any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). The court finds that a class action is a superior method of adjudication in this instance. The court has not been informed of any currently pending litigation involving the claims at issue, and the Roadway/YRC litigation was terminated in December of 2010. Nor is there indication that a class member seeks to control individually the prosecution of his or her claim. As to the question of manageability, the court finds that a class of about 350 individuals is manageable even though certain issues, such as damages, will need to be decided separately. And, of course, under Rule 23(b)(3), "[i]f the certified class representative does not adequately represent the interests of some of the class members, those class members can opt out of the class action, can seek the creation of a separately represented subclass, can ask for the replacement of the class

representative, or can intervene of right and become named plaintiffs themselves, or even class representatives, represented by their own lawyer." *In re Brand Name Prescription Drugs Antitrust Litig.*, 115 F.3d 456, 457-58 (7th Cir. 1997).

### III. CONCLUSION

For the reasons set forth, the Plaintiffs' motion for class certification is granted pursuant to Rule 23(b)(3).

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 11, 2011