IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES BROWN, JEFFERY BURKS, ANTONIO COLON, JAMES DEMOSS, JAMESON DIXON, CLARK FAULKNER, KENNETH GEORGE, LEONARD GREGORY, MARSHUN HILL, CEDRIC MUSE, LAROY WASHINGTON, DARRELL WILLIAMS, CHARLES WOODS, MICHAEL WOODS, MACK LEONARD, on behalf of themselves and similarly situated African-American employees, | ) ) ) ) ) ) ) ) ) ) | Case No. 08 CV 5908<br><br>Magistrate Judge Cox |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| YELLOW TRANSPORTATION, INC., and YRC, INC., | ) ) | |
| Defendants. | ) ) | |

_____

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| CHARLES E. BROWN, JEFFREY BURKS, ANTONIO COLON, JAMES DEMOSS, JAMESON DIXON, CLARK FAULKNER, KENNETH GEORGE, LEONARD GREGORY, MARSHUN HILL, MACK LEONARD, CEDRIC MUSE, LAROY WASHINGTON, DARRELL WILLIAMS, CHARLES WOODS and MICHAEL WOODS, | ) ) ) ) ) ) ) ) | Case No. 09 CV 7693<br><br>Magistrate Judge Cox |
| Intervening Plaintiffs | ) ) | |
| v. | ) ) | |
| YELLOW TRANSPORTATION, INC., and YRC, INC., | ) ) | |
| Defendants. | ) ) | |

CLASS COUNSEL'S UNOPPOSED PETITION
FOR ATTORNEYS' FEES AND COSTS

1

Plaintiffs, by their attorneys, respectfully request that this Court grant Class Counsel's Unopposed Petition for Attorneys' Fees and Costs in the total amount of $1,100,000.00. The attorneys' fees requested reflect the hours expended by Class Counsel in pursing this litigation. Moreover, the attorneys' fees and cost represent 10% of the total $11,000,000.00 settlement fund obtained on behalf of approximately 350 African-American individuals in this employment discrimination class action. As detailed below, the amount requested includes $33,000.00 for out-of-pocket costs and expenses incurred by Class Counsel in litigating these actions along with $1,067,000.00 for attorneys' fees.

In support of this Petition, the Named Plaintiffs and Class Counsel state as follows:

1. On October 15, 2008, the Named Plaintiffs, Charles E. Brown, Jeffrey Burks, Antonio Colon, James DeMoss, Jameson Dixon, Clark Faulkner, Kenneth George, Leonard Gregory, Marshun Hill, Cedric Muse, Laroy Washington, Darrell Williams, Charles Woods, and Michael Woods, filed a Complaint (case number 08 CV 5908), alleging that Yellow Transportation, Inc., ("Yellow") had violated Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), by discriminating against them and a class of current and former African-American employees who worked on the dock or in the yard (as spotters) at Chicago Ridge (the "Chicago Ridge Section 1981 case"). On July 10, 2010, the Court allowed Mack Leonard to join in the Chicago Ridge Section 1981 case as a Named Plaintiff and allowed the Named Plaintiffs to file their Corrected Amended Complaint ("Amended Complaint").

2. In their Amended Complaint the Named Plaintiffs allege that Yellow and Yrc, Inc., ("YRC") violated Section 1981 by creating a racially hostile work environment and allowing it to continue despite complaints by the Named Plaintiffs and other African-American employees. This racially hostile work environment was created by the following:

      a.      failing to respond to Named Plaintiffs' and the other African-American workers' repeated written and verbal complaints about nooses hung at the Chicago Ridge facility, failing to investigate these incidents, and failing to take disciplinary action against those individuals who hung the nooses;

      b.      failing to respond to Named Plaintiffs' and the other African-American workers' repeated written and verbal complaints about racially hostile graffiti written on bathroom walls, failing to investigate these incidents, and failing to take disciplinary action against those individuals who wrote the graffiti;

      c.      failing to respond to the Named Plaintiffs' and the other African-American workers' repeated written and verbal complaints that coworkers used racial slurs, wore racially hostile clothing, and publically exposed racially hostile tattoos, failing to investigate these incidents, and failing to take disciplinary action against those individuals perpetrating the racially biased environment; and

      d.      subjecting the Named Plaintiffs and the other African-American workers to disparate treatment on account of their race by subjecting them to different terms and conditions of employment including, but not limited to, subjecting them to more stringent disciplinary action than similarly situated Caucasian employees, assigning them more difficult work assignments than similarly situated Caucasian employees, promoting Caucasian workers who had worked for less time than the Named Plaintiffs and the other African-American workers instead of and/or before promoting them.

3.      Additionally, the Named Plaintiffs allege that Defendants retaliated against them and other African-American workers for complaining about the hostile work environment and the unequal terms and conditions of employment.

4. Prior to filing their Section 1981 Complaint, the Named Plaintiffs filed Charges of Discrimination with the Equal Employment Opportunity Commission (the "EEOC").

5. After investigating the Named Plaintiffs' Charges of Discrimination, the EEOC filed suit (case number 09 CV 7693) on December 10, 2099, against Yellow and YRC under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, (the "EEOC Title VII case"), alleging that YRC discriminated against African-American employees at its Chicago Ridge facility. The allegations in the EEOC Title VII case mirror the Section 1981 claims made by the Named Plaintiffs.

6. On July 9, 2010, the Named Plaintiffs moved to intervene in the EEOC Title VII case. The court granted that Motion on October 6, 2010. In their Complaint in Intervention, the Named Plaintiffs allege that Defendants violated Title VII by unlawfully discriminating against them individually by fostering a hostile work environment based upon race, and unlawfully discriminated against them in the terms and conditions of their employment at Chicago Ridge. Approximately 175 other African-American workers opted to participate in the EEOC's Title VII case. The Named Plaintffs' Section 1981 case and the EEOC Ttile VII case were litigated on separate procedural paths before two distinct District Court Judges and two Magistrate Judges.

7. After completing written and oral discovery on the issues involved in class certification, the Named Plaintiffs moved for class certification in the Section 1981 case on August 30, 2010. On May 11, 2011, the Court in the Section 1981 case certified a class of African-American employees who had worked at the Chicago Ridge facility under Rule 23(b)(3) of the Federal Rules of Civil Procedure (the "Class"), defined as follows:

> All current and former African-American employees employed between October 15, 2004, and the present by YRC Inc. and Yellow Transportation, Inc., on its docks, in offices located on or near the docks, or in the yard in the positions of dock worker, hostler, spotter, janitor,

4

supervisor, or clerical (including as a "casual," "10%," "regular," full-time or other employee) at their facility located at 10301 S. Harlem Ave., Chicago Ridge, Illinois ("Chicago Ridge") and including those Chicago Ridge African-American employees transferred in 2009 to work at the facility located at 2000 Lincoln Highway, Chicago Heights, Illinois ("Chicago Heights").

8.  While the class certification issue in the Section 1981 case was being resolved, the EEOC, the Named Plaintiffs and Defendants ("the Parties") engaged in extensive discovery on the merits of the EEOC Chicago Ridge Title VII case for over two years. This discovery included over fifty (50) depositions and the exchange of hundreds of thousands of pages of documents and electronically stored information.

9.  Through the exhaustive process involved in class certification and merits discovery, the Parties developed a thorough understanding of the facts and applicable law, which enabled them to assess the relative merits of the claims and defenses asserted by each side.

10. The Parties to this litigation also participated in mediated settlement negotiations beginning in September 2009. These negotiations were conducted at arm's length with the assistance of, at various times, two Magistrate Judges and a professional mediator. These efforts resulted in a Consent Decree that will settle both the Named Plaintiffs' Section 1981 case and the EEOC Chicago Ridge Title VII case prior to trials on the merits.

11. This Court entered an Order preliminarily approving the Parties' jointly presented Consent Decree. A fairness hearing is scheduled for September 12, 2012, after which the Court will decide whether to enter an Order finally approving the Consent Decree.

12. Notice of the terms of the Consent Decree was mailed to the members of the Class in July 2012. The Notice to the class included information concerning the right of Class Members to object to the terms of the Consent Decree, including the amount allocated to Class

Counsel for their fees and costs. No Class Member has objected to the amount allocated to Class Counsel for their fees and costs.

13. Accordingly, pursuant to the terms contained in the Consent Decree Class Counsel hereby submits this Unopposed Petition for Attorneys' Fees and Costs.

14. The results obtained by Class Counsel on behalf of approximately 350 African-American former and current employees of Defendants (including the 175 African-American employees who opted into the EEOC Title VII case) are significant. The Consent Decree provides significant monetary relief to the Class. Under the terms of the proposed Consent Decree, Defendants have agreed to pay $11 million to resolve the race discrimination and racial harassment claims of the class members. In terms of equitable relief, the Consent Decree recognizes that the Chicago Ridge facility has closed and the Class Members still employed by YRC or subject to recall by YRC now work at YRC's Chicago Heights facility. That facility is already subject to a Consent Decree that adequately protects the Class Members still employed by YRC or subject to recall by YRC.

15. The successful resolution of this class action has been extremely hard fought. The considerable monetary relief obtained on behalf of the class reflects, in part, a substantial amount of work performed by Class Counsel as reflected in the attached chart summarizing the hours spent by Class Counsel in this litigation. *See* Exhibit A-2. Between August 13, 2007 and the present, Class Counsel (including the law students working under the supervision of Randall Schmidt) devoted over 3900 hours to the successful litigation of this complex class action. As described in greater detail below, the work performed included significant fact investigation and development to support the claims made for the Class certified in the Section 1981 case. The work also involved extensive written and deposition discovery, substantial legal research and

6

analysis, and complex briefing of legal arguments and motions before the District Court and Seventh Circuit Court of Appeals.

16. When Catherine Caporusso and Carol Coplan Babbitt agreed to take over the representation of the Named Plaintiffs in August, 2007, and October, 2007, they were both solo practioners. Despite this, Ms Caporusso and Ms. Babbitt undertook significant risks and lost opportunity costs in order to properly represent the Named Plaintiffs. After agreeing to take over the representation of the Named Plaintiffs, and while Ms. Caporusso was on maternity leave, Ms. Babbitt conducted extensive interviews of the Named Plaintiffs, reviewed documentation provided by the Named Plaintiffs, prepared the Named Plaintiffs for their interviews with the EEOC investigator, and personally attended all of the EEOC interviews of the Named Plaintiffs.

17. In June, 2008, Ms. Caporusso and Ms. Babbitt contacted Randall Schmidt to see if he and his University of Chicago Law School students were interested in assisting with this litigation. After reviewing the EEOC Charges, interviewing the Named Plaintiffs, and conducting additional factual investigation and legal research, Mr. Schmidt agreed to represent the Named Plaintiffs. He and his law students then drafted the Section 1981 Complaint, which was filed in October, 2008.

18. Class Counsel has litigated this case diligently and forcefully. Likewise, Defendants have aggressively defended against the claims made by the Named Plaintiffs. In response to the aggressive defense mounted by Defendants, and in support of the individual and class claims included in the Section 1981 case and the claims made in the EEOC Title VII case, Class Counsel was required to engage in extensive legal briefing, motion practice, and discovery to vigorously protect and advance the interests of the Class.

19. Discovery was intense in these cases. In the Section 1981 case, Class Counsel spent a significant amount of time gathering the necessary factual information to respond to Defendants' detailed sets of written interrogatories, as well as the Defendants' numerous requests for production of documents. Analyzing and organizing the information for the responses to the written discovery was highly time intensive.

20. Class Counsel also spent a significant amount of time reviewing and analyzing the thousands of pages of documents produced by Defendants in both cases.

21. Class counsel also spent hundreds of hours preparing the Named Plaintiffs for their depositions, and defending those depositions in the Section 1981 case. Notably, Defendants' depositions of almost all of the named Plaintiffs lasted the entire seven (7) hours allowed by the Federal Rules of Civil Procedure and one lasted ten (10) hours.

22. Similarly, a significant amount of time was spent preparing and taking the Rule 30(b)(6) depositions that were necessary for certification of the Class in the Section 1981 case.

23. Discovery in the EEOC Title VII case was also intense. Class Counsel spent hundreds of hours on the depositions of dozens of the Claimants in the EEOC Title VII case and dozens of Defendants' supervisors. Class Counsel's direct communication with the Named Plaintiffs during the depositions in the EEOC Title VII case was crucial in obtaining material facts. During the deposition process, the Parties still hotly contested documents remaining to be produced and numerous discovery motions were filed to assist in resolving these issues.

24. In addition to the hours spent in discovery, Class Counsel spent hundreds of hours in efforts to successfully obtain class certification in the Section 1981 case. Not surprisingly, the Named Plaintiffs' motion for class certification was strongly opposed by Defendants and significant work was required to prevail. Even after prevailing, however, Class Counsel was

required to oppose Defendants' Rule 23(f) Petition for Permission to Appeal filed with the Seventh Circuit.

25. Reaching the compromise reflected in the Consent Decree was itself a long and arduous process, involving significant amounts of time in both legal and factual analysis related to the damages suffered by the class. Considerable time was spent in engaging in on-going negotiations, as well as formal mediation sessions. Finally, extensive work and time was required during the process of drafting and redrafting the specific provisions and exhibits that were finally agreed to by the Parties as part of the Consent Decree.

26. Class Counsel's work is far from complete. Specifically, Class Counsel will be required to spend substantial amounts of time monitoring the implementation of the Consent Decree, the determination by the EEOC of the Class Members' claims, and the distribution of the settlement fund. Moreover, Class Counsel has agreed to file the necessary tax returns for the settlement trust fund that was created as part of the Consent Decree.

27. The requested award of fees is consistent with the law involving class action settlements and is fair, adequate, and reasonable. The facts to be considered in class action fee awards include the time and labor expended by counsel; the degree of success obtained; the magnitude, complexities, and difficulties of the litigation; the preclusion of employment by Plaintiffs' attorneys due to acceptance of the case; the risk of the litigation; the quality of the representation and the legal skills required; the requested fee in relation to the settlement and contingency fee nature of the case; the customary fee, the market rate and awards in similar cases; and the public policy considerations. *Mathure v. Board of Trustees,* 317 F.3d 738, n.1 (7th Cir. 2003); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

9

28. The fees requested are reasonable in light of the time and labor expended by Class Counsel. From the time Class Counsel started investigating this case through the present, Class Counsel and Defendants' counsel have litigated this case vigorously. The need to match the extensive efforts and resources of Defendants and their counsel required extensive time and labor. The scope of the legal and factual matters raised in this litigation were extensive and thus extraordinarily time-consuming.

29. The requested fees are reasonable in light of the magnitude, complexities and difficulties of the litigation. Employment discrimination class actions are typically both factually and legally complex and difficult. And this case was particularly so. These matters were litigated in front of two district court judges, two Magistrate Judges and the Seventh Circuit. Class Counsel worked with a large class and with complex legal issues, received hundreds of thousands of pages of documents and computer data, and took and defended scores of depositions. The time spent preparing for and obtaining class certification was extensive. Even the mediation and settlement of this case took several years in light of the complex matters raised and the significant monetary relief sought.

30. Courts recognize that the riskier the case, the greater the justification for a substantial fee award. The riskiness of the case must be assessed at the time the litigation is commenced. *In re Synthroid Marketing Litigation*, 264 F.3d 712, 718 (7th Cir. 2001). At the time the Named Plaintiffs filed their Section 1981 case, the EEOC was still investigating the Named Plaintiffs' Charges of Discrimination. For more than a year, the Named Plaintiffs were on their own in this litigation.

31. Moreover, employment discrimination class cases are particularly risky. The time and resources required to pursue such cases, in combination with the likelihood of receiving no

recovery, results in a small number of attorneys willing to take on plaintiff employment class action cases. Moreover, race-based class actions alleging a "hostile environment" theory are still relatively novel and fee cases have succeeded in obtaining class certification for a racially hostile environment. Defendants' relentless and vigorous disagreement with the Named Plaintiffs' theory of the case (both factual and legal) highlights the risk entailed in pursing the litigation. There was a likelihood that the court would not certify the class and Class Counsel knew at the outset that this case would be extremely costly and time-consuming.

32. Defendants have been represented by major law firms with capable and experienced counsel. Ms. Caporusso and Ms. Babbitt are solo practioners. Their risk in pursuing this litigation was substantial. Although Mr. Schmidt and his law students from the University of Chicago Law School helped spread some of the work, their involvement in this case did not minimize the risk undertaken by Ms. Caporusso and Ms. Babbitt.

33. The quality of the representation, skills required and results obtained also support the fees requested by Class Counsel. The results obtained for the benefit of the Class are substantial. The $11 million settlement represents a significant monetary settlement for the approximately 350 class members. In terms of equitable relief, the Consent Decree recognizes that the Chicago Ridge facility has closed and the Class Members still employed by YRC or subject to recall by YRC now work at YRC's Chicago Heights facility. That facility is already subject to a Consent Decree that adequately protects the Class Members still employed by YRC or subject to recall by YRC.

34. The quality and skill of Class Counsel is reflected in the results obtained in the litigation. Mr. Schmidt has practiced in the area of employment discrimination for more than thirty (30) years and has successfully litigated a number of both individual and class action

employment discrimination cases. Ms. Babbitt has practiced law for twenty-four (24) years. For the past fifteen (15) years, she has worked as a solo practitioner in the areas of employment and commercial litigation. Ms. Caporusso has been licensed to practice for more that seventeen (17) years and handled employment litigation, including class actions. *See* Declaration of Randall D. Schmidt, attached as Exhibit A.

35. The requested fees are reasonable in light of the market rate, customary fee and awards in similar cases. The first and best benchmark for establishing the appropriate rate in a particular case is the terms of the actual fee agreements between counsel and individual class members in the present litigation. *In re Synthroid Marketing Litigation*, 265 F.3d 712, 718 (7th Cir. 2001) ("best to award counsel the market price for legal services in light of the risk of nonpayment and the normal rate of compensation in the market at the time"). Here Ms. Caporusso and Ms. Babbitt entered into a one-third contingency fee arrangement with the Named Plaintiffs, which demonstrates that these Plaintiffs and plaintiffs in similar cases are willing to pay such amounts. The fees and costs requested by Class Counsel amounts to 10% of the total settlement amount, which is significantly less that the 33% contained in the fee agreements.

36. As itemized in the attached Declaration of Randall D. Schmidt, the hourly rates sought by Class Counsel in this litigation is $400 for the attorneys involved and $125 for the law students who worked on this case. These rates are reasonable in light of the experience of the attorneys involved. Ms. Caporusso's actual current billing rate is $400 per hour. Ms. Babbitt was awarded $375 per hour in a class action case in 2011 and an increase to $400 per hour is reasonable in light of her skill and experience. Although Mr. Schmidt and his law students do not have normal hourly rates because Mr. Schmidt does not charge his clients, in 2007 he was awarded $385 per hour for his work and $90 for the work of his law students in *Smith v. Nike*,

12

No. 03 CV 9110 (N.D. Ill.), a class action race discrimination case. An increase to $400 per hour for Mr. Schmidt and $125 for his law students for the five year period from 2007 to the present is reasonable. Moreover, the law firms that employ Mr. Schmidt's students as summer associates bill between $150 and $250 for their work. As detailed in the Declaration of Randall D. Schmidt, the work performed by the law students in this case was substantial - they were full participants in the litigation, not just observers. Thus, $125 per hour for the students' work in this case is appropriate. Finally, none of the fees awarded for the work of Mr. Schmit and his law students will go to Mr. Schmidt or the law students. Rather, the fees awarded fo rtheir work in this litigaion will go to the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School.

   37.  Public policy considerations support the award of the fees requested. In this case, individuals banded together to bring a suit that required far too much time and expense for any single person, with the goal of securing compensation for injuries suffered by the Named Plaintiffs and members of the Class. Congress and the courts have repeatedly recognized the strong public interest in the enforcement of civil rights and anti-discrimination laws. *See Riverside v. Rivera*, 477 U.S. 561, 574-75 (1986) ("a civil rights plaintiff seeks to vindicate important civil and constitutional right that cannot be valued solely in monetary terms ... the damages a plaintiff who obtains relief in a civil rights lawsuit does so not for [her]self alone but also as a 'private attorney general' vindicating a policy that Congress considered of the highest importance.") (internal citations omitted). Here, awarding reasonable fees and expenses to Class Counsel in this case promotes the public policies underlying class actions, 42 U.S. C. §1981, and Title VII.

For the reasons explained above, Class Counsel respectfully requests that this Court grant Class Counsel's Unopposed Petition for Attorneys and Costs and award Class Counsel the amount of $1,100,000.00 as their reasonable fees and costs.

                                                Respectfully Submitted,

                                             /s Randall D. Schmidt_____
                                             One of the Attorneys for the Plaintiffs
                                                and the Plaintiff Class

                                             RANDALL D. SCHMIDT
                                             Edwin F. Mandel Legal Aid Clinic
                                                of the University of Chicago Law School
                                             6020 S. University Ave.
                                             Chicago, IL 60637
                                             (773) 702-9611

| CAROL COPLAN BABBITT | CATHERINE A. CAPORUSSO |
|---|---|
| The Law Office of Carol Coplan Babbitt | Law Office of Catherine Caporusso |
| 35 E. Wacker Dr. | 53 W. Jackson |
| Suite 650 | Suite 505 |
| Chicago, IL 60601 | Chicago, IL 60604 |
| (312) 435-9775 | (312) 933-0655 |

                    *COUNSEL FOR THE PLAINTIFFS AND THE PLAINTIFF CLASS*

Dated:  September 10, 2012